IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| WOLVES OF THE ROCKIES, INC., a Montana Corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>SUZANNE STONE;<br>INTERNATIONAL WILDLIFE<br>COEXISTENCE NETWORK, INC.,<br><br>       Defendants. | CV 21–140–M–DLC<br><br><br>ORDER |

Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction and improper venue.  (Doc. 10.)  Defendants argue this Court lacks personal jurisdiction over them, and, in any event, the District of Montana is an improper venue for this dispute.  (Doc. 11 at 6.)  For the reasons stated herein, the Court finds it lacks personal jurisdiction and will dismiss the case.

## BACKGROUND[1]

In this action, Plaintiff Wolves of the Rockies, Inc. ("WOTR") complains that Defendants Suzanne Stone ("Ms. Stone") and the International Wildlife

---

[1] For the purposes of this motion, the Court takes as true the "uncontroverted allegations in the complaint," but does not "assume the truth of allegations . . . which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  Any factual disputes are resolved in WOTR's favor. *Id.*

Coexistence Network, Inc. ("IWCN") (collectively referred to as "Defendants") are infringing on its trademarks in violation of Montana and federal law. (Doc. 1 at 11–14.) WOTR is a Montana corporation. (*Id.* at 1.) IWCN is an Idaho corporation. (Doc. 11-1 at 4.) Ms. Stone resides in Idaho and is IWCN's executive director. (*Id.* at 2–3.)

The parties have somewhat of a history. Without a doubt, they share a passion for the conservation of wild wolf populations in western America, (Docs. 1 at 2–3; 11-1 at 2–5) but, unsurprisingly, they do not always agree on how to accomplish their shared objectives. The record reflects a history of conflict between WOTR and Ms. Stone. An affidavit submitted by Marc Cooke, the President of WOTR, recounts an incident from 2010 when he ran into Ms. Stone at a hearing in the Russell Smith Federal Courthouse in Missoula, Montana. (Doc. 20-2 at 1, 8.) According to Mr. Cooke, their conversation was "very short and ended rudely," with Ms. Stone "curtly turn[ing] her back" away from him after he revealed his affiliation with WOTR. (*Id.* at 8.)

An affidavit from Kim Bean, Vice President of WOTR, recounts another incident occurring at Chico Hot Springs in Montana in March 2013. (Doc. 20-3 at 2.) During this time, Ms. Bean attended a wolf preservation event, organized by Ms. Stone. (*Id.* at 2.) While there, Ms. Stone asked Ms. Bean "who [she] was and [her] affiliation." (*Id.*) When Ms. Bean stated she was with WOTR, Ms. Stone

told her she was not welcome and had to leave. (*Id.*) She complied. (*Id.*)

Following these encounters, Ms. Stone suddenly contacted WOTR "out of the blue" in March 2021. (*Id.*) Ms. Stone said she was interested in collaborating with WOTR in their efforts to protect "wolves in Montana and the Northern Rockies." (*Id.*; Doc. 20-2 at 1–2.) Around this time, WOTR was preparing to launch a "wolf protection campaign" in response to legislative efforts in Montana to authorize wolf hunting. (Doc. 20-2 at 2.) This campaign included the phrase #RelistWolves and a planned video designed to "educate the public about the plight of wolves in North America." (Docs. 1 at 6; 20-2 at 2.)

The parties began chatting about WOTR's "objectives and plans over the next year," including the #RELISTWOLVES campaign and video. (Docs. 1 at 6; 20-2 at 2.) Following their discussions, Ms. Stone transmitted a variety of proposed plans to WOTR and eventually suggested it "bring[] in a public relations firm named 'Resolve.'" (Doc. 20-2 at 2.) In one proposal, WOTR would have paid Resolve $167,000 for six months of services. (*Id.*) WOTR rejected this proposal because it was uncertain where exactly the money would be going. (*Id.*)

Ms. Stone followed up with another proposal, in May 2021, whereby WOTR would have paid $184,250. (*Id.* at 3.) This time WOTR discovered that $86,250 of this total would go directly to IWCN. (*Id.*) WOTR then began to believe that Ms. Stone was suddenly eager to work with them because she and IWCN could

monetarily benefit.  (*Id.* at 3, 8.)  It appears no deal was struck but Ms. Stone

continued to submit project proposals to WOTR.  (*Id.* at 3.)[2]

The events giving rise to this lawsuit occurred in October 2021.  On October

19, 2021, WOTR participated in a National Wolf Call hosted by the Endangered

Species Coalition.  (*Id.*)  The National Wolf Call appears to be a recurring call

involving "about 50 participants or organizations that work on wolf preservation

matters," many of whom operate in Montana.  (*Id.*)  During this specific call,

WOTR was supposed to occupy a "prominent position in the agenda" to lay out its

"#RelistWolves strategy," but Ms. Stone apparently hijacked this time to show a

video she had created instead.  (*Id.* at 4.)  This video related to "the same subject

matter" WOTR has previously discussed with her and used, without WOTR's

permission, its website relistwolves.org.  (*Id.* at 4–5; Doc. 1 at 6.)  Many people

located within Montana attended this call.  (Doc. 20-2 at 5.)

Following the call, WOTR confronted Ms. Stone about her video's use of its

website relistwolves.org.  (Doc. 1 at 7.)  She removed the website from her video

but subsequently registered her own website, relistwolvesnow.org.  (Docs. 1 at 7;

11-1 at 6.)  This common use of the word "relistwolves" in their respective

websites created confusion among wolf advocates, and Mr. Cooke subsequently

---

[2] It appears Ms. Stone also proposed similar plans to other conservation organizations, including
some located in Montana.  (Doc. 20-2 at 6–8.)

received several inquiries about whether WOTR, Ms. Stone, and IWCN were associated.  (Docs. 1 at 6–8; 20-2 at 6.)

Ms. Stone then continued using the "RelistWolves" trademark WOTR claims to possess, including on her own and IWCN's website and social media pages.  (Doc. 1 at 8–10.)  WOTR asked her to stop using the phrase "RelistWolves" but she refused.  (*Id.* at 10.)  On November 16, 2021, WOTR sued Defendants in this Court complaining they are infringing on its trademarks and engaging in unfair competition in violation of Montana and federal law.  (Doc. 1 at 11–14.)[3]  WOTR sought preliminary injunctive relief (Doc. 3) and the Court set a hearing on the matter for January 26, 2022 (Doc. 6).

In response, Defendants filed the instant motion to dismiss (Doc. 10) and submitted an oppositional affidavit from Ms. Stone.  (Doc. 11-1.)  This affidavit establishes that Ms. Stone does not have an office or residence in Montana, nor does she "own, use, possess, or rent any property in Montana."  (*Id.* at 3.)  It further attests that she has never "acted as a director, manager, trustee, or other officer of a Montana corporation or other entity with its principal place of business in Montana[,]" been a personal representative for a Montana estate, or insured anything within the state.  (*Id.*)  IWCN's contacts with Montana appear to be

---

[3] The crux of these claims is Defendants' alleged misappropriation of WOTR's intellectual property, specifically the ostensible trademarks "RELISTWOLVES" and "#RELISTWOLVES. (*Id.* at 5, 11–14.)

similarly sparse.  Ms. Stone' affidavit provides that IWCN is not affiliated with

any Montana corporation, "has not offered, sold, or distributed any merchandise,

printed materials, or other goods in Montana," and does not insure "any person,

property, or risk located within Montana."  (*Id.* at 4.)  It does appear IWCN

maintains a website, but it is accessible to anyone in the world.  (*Id.* at 8.)  With the

foregoing factual summary in mind, the Court turns its attention to the merits of

Defendants' motion.

## ANALYSIS

The Court need only address the issue of personal jurisdiction.  The Federal

Rules of Civil Procedure authorize a motion to dismiss for lack of personal

jurisdiction.  Fed. R. Civ. P. 12(b)(2).  WOTR bears the burden of establishing

personal jurisdiction over the Defendants, but because the Court has not held an

evidentiary hearing, WOTR "need only make a prima facie showing of

jurisdictional facts."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

800 (9th Cir. 2004).  As noted above, jurisdictional facts are derived largely from

the complaint, unless controverted by a declaration or affidavit.  *Id.*  Applying this

standard, the Court finds it must grant Defendants' motion.

The bounds of this Court's personal jurisdiction are governed by Montana

law and the Constitution.  *Axiom Foods, Inc. v. Acerchem Intern., Inc.*, 874 F.3d

1064, 1068 (9th Cir. 2017).  The relevant state law provision is Montana's long-

arm statute—Montana Rule of Civil Procedure 4(b).  *King v. American Family Mut. Ins. Co.*, 632 F.3d 570, 578 (9th Cir. 2011).  The relevant constitutional provision is the Fourteenth Amendment's Due Process Clause.  *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, ___ U.S. ___, ____, 141 S. Ct. 1017, 1024 (2021).

When assessing its personal jurisdiction, this Court asks whether: (1) Montana's long-arm statute permits the exercise of personal jurisdiction; and (2) if so, whether due process is nonetheless offended.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006).  Montana's long-arm statute "permits the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process," so "the jurisdictional analyses under [Montana] law and federal due process are the same."  *King*, 632 F.3d at 578–79.

The Court's analysis hinges on whether Defendants have a sufficient relationship to Montana, such that "the maintenance of the suit . . . does not offend traditional notions of fair play and substantial justice."  *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).  "That focus" has led to the recognition of "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction."  *Id.*  Both are at issue in this case and the Court will

discuss each in turn.

### A. General Personal Jurisdiction.

As its name conveys, general personal jurisdiction is the broader of the two types of personal jurisdiction identified above. This sort of personal jurisdiction attaches based on a defendant's relationship with Montana, irrespective of whether the lawsuit has anything to do with events or conduct occurring here. *Id.* In other words, this Court may exercise general personal jurisdiction over a Montana defendant for a lawsuit "concern[ing] events and conduct" occurring "anywhere in the world," and having nothing at all to do with Montana. *Id.* For example, general jurisdiction may permit a defendant to be sued in Montana in the wake of a car accident that occurred in Texas with an Arizona resident.

The Due Process Clause tolerates this "sweeping jurisdiction" only because it requires a "select set of affiliations" between defendant and Montana such that the defendant is "essentially at home" here. *Id.*; *see also* Mont. R. Civ. P. 4(b)(1) (stating "All persons found within the state of Montana are subject to the jurisdiction of Montana courts"); *Tackett v. Duncan*, 334 P.3d 920, 925 (Mont. 2014) (noting that this language in Rule 4(b)(1) is Montana's statement of general jurisdiction). This standard "is high," and, to reiterate, requires a "defendant [to] not only step through the door," but "sit down and make itself at home." *King*, 632 F.3d at 579.

For an individual, the inquiry is simple because a defendant is only "at home" where they live. *Ford Motor Co.*, 141 S. Ct. at 1024. The situation is more complicated for corporate defendants because they are "at home" in both their "place of incorporation and principal place of business." *Id.* Further, the Supreme Court has left open "the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). The Court finds no basis for the exercise of general personal jurisdiction over Defendants in this case.

Defendants are not at home in Montana. They are at home in Idaho. Ms. Stone resides in Idaho, IWCN is organized there, and by all accounts maintains its principal place of business there. (Doc. 11-1 at 3–4.) WOTR appears to recognize this and instead argues general personal jurisdiction exists because this is the sort of exceptional case contemplated by *Daimler*'s nineteenth footnote. (Doc. 20 at 9–14.) The crux of this argument is that Defendants have regularly solicited business in Montana and otherwise routinely entered Montana in furtherance of their "wolf-related activities." (*Id.*) Defendants respond that "a handful of discrete Montana-related contacts that supposedly occurred over the past eleven years" are

insufficient to render them "at home" in Montana.  (Doc. 25 at 8.)[4]  The Court

agrees.

Cases in which a defendant who does not live in Montana, is not organized

here, and does not maintain a principal place of business here, has such substantial

contacts with Montana to be subject to general personal jurisdiction, are

exceedingly rare.  *Nomad Global Commun. Sols. Inc. v. Hoseline, Inc.*, 2021 WL

1400983, *3–4 (D. Mont. 2021) (comparing the circumstances of *Perkins v.*

*Benguet Consol. Min. Co.*, 342 U.S. 437 (1952) to *Martinez v. Aero Caribbean*,

764 F.3d 1062 (9th Cir. 2014)).  The fact that Ms. Stone, on behalf of IWCN, may

have traveled to Montana in furtherance of their organizational activities

periodically in years past and otherwise offered her services to Montana

organizations, is not sufficient to render her or IWCN at home here.  *Martinez*, 764

F.3d at 1069–70 (concluding that a French corporation having contracts in

California worth "$225 to $450 million" and routinely advertising and soliciting

business in California is not the sort of "exceptional case" to which the *Daimler*

exception applies).  In short, general personal jurisdiction does not exist.

Consequently, the Court turns its attention to whether there is specific personal

---

[4] Defendants also argue that because WOTR did not plead general personal jurisdiction in its
complaint, just specific (Doc. 1 at 2), it cannot level that argument now.  (Doc. 25 at 7.)  The
Court disagrees.  The personal jurisdiction analysis may, and indeed, must, extend beyond the
complaint.  *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)
(authorizing discovery on personal jurisdiction); *Schwarzenegger*, 374 F.3d at 800 (a plaintiff
"cannot simply rest on the bare allegations of" the complaint).

jurisdiction.

### B.      Specific Personal Jurisdiction.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024.  Generally, the exercise of specific personal jurisdiction turns on whether the defendant has had some contact with the forum state *and* the lawsuit at issue stems from that contact.  *Id.*  Recall, as noted above, the proper exercise of specific personal jurisdiction by this Court is a matter of both state law and the Constitution.  *Caddy*, 453 F.3d at 1154–55.

As with general jurisdiction, Montana's long-arm statute establishes the bounds "for specific jurisdiction" as a matter of state law.  *Tackett*, 334 P.3d at 925 (citing Mont. R. Civ. P. 4(b)(1)).  This statute delineates a variety of acts, which if committed in Montana, subject the actor to specific personal jurisdiction for suits relating to those acts.  *Buckles ex rel. Buckles v. Continental Resources, Inc.*, 402 P.3d 1213, 1217 (9th Cir. 2017); *see also* Mont. R. Civ. P. 4(b)(1)(A)–(G).  Really only Rule 4(b)(1)( B)— the commission of a tort in Montana—appears to be at issue.  (Doc. 11-1 at 3–4); *Ayla, LLC v. Alya Skin Pty. Ltd.*,11 F.4th 972, 979 (9th Cir. 2021) ("Trademark infringement is treated as tort-like for personal jurisdiction purposes").

The federal due process inquiry asks similar questions, including whether:

(1) "the defendant has performed some act or consummated some transaction

within the forum or otherwise purposefully availed himself of the privileges of

conducting activities in the forum;" and (2) "the claim arises out of or results from

the defendant's forum-related activities." *Caddy*, 453 U.S. at 1155.  But, for the

due process inquiry, the Court must also ask whether the exercise of specific

jurisdiction is "reasonable." *Id.*  This analysis asks whether, based on a number of

factors, there is "a compelling case that the presence of some other considerations

would render jurisdiction unreasonable." *Panavision Intern., L.P. v. Toeppen*, 141

F.3d 1316, 1322 (9th Cir. 1998).  If any of the questions are answered in the

negative, "jurisdiction in the forum would deprive the defendant of due process of

law." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020).

Defendants contend none of the circumstances in Rule 4(b)(1)(B) apply and

even if they did the exercise of personal jurisdiction in this case would offend due

process.  (Doc. 11 at 11–18.)  WOTR, for its part, contends that its claims arise

from Defendants' "intentional acts" of trademark infringement and

misappropriation of intellectual property directed into Montana.  (Doc. 20 at 14–

20.)  This argument targets Defendants' website, relistwolvesnow.org, and the

October 19, 2021 video presentation.  (*Id.*)[5]  Ultimately, the Court finds the

---

[5] To the extent WOTR blends Defendants' non-suit related contacts into its specific jurisdiction analysis (Doc. 20 at 18), the Court excises them from its own analysis.  *Picot v. Western*, 780

exercise of specific personal jurisdiction in this case improper.

Because any exercise of personal jurisdiction under Montana law must comport with due process, the Court begins (and ultimately ends) its inquiry there. *King*, 632 F.3d at 579–80.  Turning to the first factor— purposeful availment— because this case involves intellectual property torts and the "allegedly tortious conduct t[ook] place *outside* the forum" but apparently had "effects inside the forum," the Court applies an "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984).  *Wanat*, 970 F.3d at 1208–09; *see also Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021).  Under this test, "a defendant purposefully directs its activities toward the forum when the defendant has (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Ayla*, 11 F.4th at 980.

The Court focuses its attention on the express aiming requirement.  Conduct is not expressly aimed at the forum state just because the defendant knows the plaintiff resides there.  *Id.* (noting "the plaintiff cannot be the only link between the defendant and the forum").  Instead, there must be evidence the defendant directly targeted their conduct into the forum.  *Id.*  Because, at its core, this is a trademark infringement case arising largely in "the context of cyberspace", the Ninth

---

F.3d 1206, 1215 n.3 (9th Cir. 2015) (holding conduct unrelated to the claims in the complaint "has no bearing" on specific personal jurisdiction).

Circuit's prior decision in *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) proves quite instructive.

There, the Ninth Circuit addressed whether the use of an "allegedly infringing . . . service mark" on a passive website "suffices for personal jurisdiction in the state where the holder of the mark has its principal place of business." *Id.* at 415. The Ninth Circuit concluded it did not, holding that the operation of "an essentially passive home page on the web" using an allegedly infringing mark, alone, cannot establish "purposeful availment" for specific personal jurisdiction purposes. *Id.* at 419–20. In doing so, it emphasized the non-commercial nature of the website lacked any deliberate direction toward the forum state. *Id.*

Subsequent cases are consistent. Take *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), for example. There a plaintiff living in California bought a car on eBay from some defendants in Wisconsin. *Id.* at 1014. The plaintiff had the car shipped to California and when it arrived, it was not what he expected. *Id.* He ended up suing defendants in the federal court in California, but the district court dismissed the suit for lack of personal jurisdiction. *Id.* at 1014–15. The Ninth Circuit affirmed, focusing on the question of specific personal jurisdiction. *Id.* at 1016.

It found there was none, concluding that the "one-time contract for the sale

14

of a good [through eBay] that involved the forum state only because that is where

the purchaser happened to reside" was insufficient to subject defendants to the

jurisdiction of the federal court in California. *Id.* at 1018–19. To bolster this

holding, the Ninth Circuit recognized the Supreme Court's "note of caution that

traditional jurisdictional analyses are not upended simply because a case involves

technological developments that make it easier for parties to reach across state

lines." *Id.* at 1019.

The Ninth Circuit's more recent decision in *Ayla, LLC v. Alya Skin Pty. Ltd.*,

11 F.4th 972 (9th Cir. 2021) is particularly informative in this case. In *Ayla*, a

California based "beauty and wellness brand" sued an "Australian skincare

company" for trademark infringement and other violations of the Lanham Act. *Id.*

at 977. The focus of its claim was on the defendant's online activities including

the selling and shipping of products worldwide through its website. *Id.* Less than

2% of defendant's worldwide sales were to California, and it never directed itself

primarily to California residents. *Id.*

Critical to this case, the Ninth Circuit focused its attention on whether the

defendant was subject to nationwide personal jurisdiction under Federal Rules of

Civil Procedure 4(k)(2). *Id.* at 978. An indispensable basis for the exertion of

nationwide personal jurisdiction is that the defendant not already be subject to

personal jurisdiction in any state, including the forum-state California. *Id.* at 978–

79.  The district court's holding that this was the case went unchallenged on appeal

and the Ninth Circuit recognized that nationwide personal jurisdiction is reserved

for the "unusual" circumstance where "a defendant has the requisite contacts with

the United States but not with any one state."  *Id.* at 978 n.1.

    With this authority in mind, the Court finds WOTR's theory of specific

personal jurisdiction hits a snag almost right away.  To the extent WOTR's claims

rest on Defendants' operation of the relistwolvesnow.org website, the Court finds

the exercise of specific personal jurisdiction foreclosed by the *Cybersell* line of

cases.  The record reveals that the website at issue is passive, non-commercial, and

broadly advocates for the protection of wolves in North America, and, more

particularly, the West.  (Doc. 11-1 at 7–11.)  Nothing in the record establishes the

website is directed at Montana or even particularly frequented by Montanans.  (*Id.*

at 8.)

    Of course, Montana is one of many states that is the focus of wolf

conservation activities, but the website allegedly bearing an infringing mark is

directed at the world at large, or more narrowly, North America, with the hopes of

raising awareness about wolf conservation activities.  Some of these activities *may*

involve issues in Montana or be of interest to Montanans, but this is not enough to

fairly say the website at issue is purposefully directed to Montana.  In other words,

to the extent WOTR's theory of specific personal jurisdiction rests on Defendants'

allegedly infringing website, Defendants have not purposefully availed themselves to jurisdiction in Montana so as to satisfy due process.

WOTR's theory of personal jurisdiction as to Defendants' alleged use of its "relistwolves" trademarks in a video is similarly unavailing. The infringement allegedly occurred during a phone call between persons and organizations "that work on wolf preservation matters," with some, but not all, of the participants being from Montana. (Doc. 20-2 at 3.) Indeed, it appears the call is focused on nationwide (and even international) wolf conservation activities. (*See* Doc. 20-2 at 36–38.) This is not enough to find purposeful availment in Montana for specific personal jurisdiction purposes. In other words, the Court does not find the actions of Defendants of which WOTR complains were purposefully directed at Montana. As such, the exercise of personal jurisdiction would offend due process.

Based on the foregoing, the Court will dismiss the above-captioned matter for lack of personal jurisdiction. Because of this conclusion, the Court does not reach the issue of venue.

Accordingly, IT IS ORDERED the motion (Doc. 10) is GRANTED, to the extent it seeks dismissal based on a lack of personal jurisdiction.

IT IS FURTHER ORDERED any other pending motions are denied as MOOT and the preliminary injunction hearing set for January 26, 2022 (Doc. 6) is VACATED.

IT IS FURTHER ORDERED the above-captioned matter is DISMISSED for

lack of personal jurisdiction.

DATED this 13th day of January, 2022.

Dana L. Christensen, District Judge
United States District Court